IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DOROTHY FARRIS, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF TROY FARRIS, DECEASED, CHRISTOPHER FARRIS, AARON FARRIS, AND ALEYA MAE FARRIS<br>    PLAINTIFFS,<br><br>VS.<br><br>CONTINENTAL TIRE THE AMERICAS, LLC<br>    DEFENDANT | § § § § § § § § § § § § § § | 6:19-CV-436 |

## PLAINTIFFS' ORIGINAL COMPLAINT

### SUMMARY

This case arises from a defective tire that resulted in the death of Troy Farris (57) of Belton, Texas. Mr. Farris leaves behind his wife of over 30 years Dorothy Farris along with the couple's three children Christopher, Aaron, and Aleya Farris.

### I.   THE PLAINTIFFS

1.1   Plaintiff Dorothy Farris, Individually, and on behalf of the Estate of Troy Farris is an individual residing in Bell County Texas.

1.2   Additionally, Dorothy Farris brings this action as the Representative of the Estate of Troy Farris who died intestate, and no administration of the estate being necessary at this time, brings a cause of action as Representative of The Estate of Troy Farris, Deceased, pursuant to Tex. Civ. Prac. & Rem. Code § 71.021, commonly referred to as the "Texas Survival Statute."

1.3   Plaintiff, Christopher Farris is an individual residing in McLennan County, Texas.

1.4     Plaintiff Aaron Farris is an individual residing in Bell County, Texas.

1.5     Plaintiff Aleya Farris is an individual residing in Bell County, Texas.

1.6     All Plaintiffs bring their claims pursuant to the Texas Wrongful Death Act. Tex. Civ. Prac. & Rem. Code § 71.004.

## II.     THE DEFENDANT

2.1     Defendant Continental Tire The Americas, LLC (at times referred to as "CONTIENTAL") is a South Carolina corporation authorized to conduct business in the State of Texas and may be served with service of process through its registered agent, C T Corporation System, 1999 BRYAN ST., STE. 900, DALLAS, TX 75201-3136.  As an unincorporated entity, for purposes of subject matter jurisdiction, Continental's citizenship is shared with each one of its members, who on information and belief, reside in South Carolina.

## III.     JURISDICTIONAL FACTS

3.1     This Court has specific personal jurisdiction over Defendant Continental Tire The Americas, LLC because:

- CONTINENTAL has been selling tires through its distributors in Texas;

- CONTINENTAL has been shipping tires to its distributors in Texas;

- CONTINENTAL has been shipping tires in Texas to its dealers, including locations in El Paso, Houston, Dallas, San Antonio, Corpus Christi, Amarillo, Odessa, and Midland, Texas;

- From 2004 to 2019 CONTINENTAL has invoked the jurisdiction of Texas courts and federal courts in Texas;

- From 2004 to 2019 CONTINENTAL has filed suit in Texas courts;

- From 2004 to 2019 CONTINENTAL has removed suits to federal courts in Texas;

- From 2004 to 2019 CONTINENTAL has filed court papers asserting that federal courts in Texas had jurisdiction over cases in which CONTINENTAL was a party;

- From 2004 to 2019 CONTINENTAL has moved to transfer suits to courts in Texas;

- From 2004 to 2019 CONTINENTAL has filed court papers asserting that transferee courts in Texas had jurisdiction over cases in which CONTINENTAL was a party;

- From 2004 to 2019 CONTINENTAL has filed petitions or appeals seeking review or relief from Texas appellate courts;

- From 2004 to 2019 CONTINENTAL has filed court papers asserting that Texas appellate courts had jurisdiction over cases in which CONTINENTAL was a party;

- From 2004 to 2019 CONTINENTAL has answered lawsuits filed in Texas courts without contesting personal jurisdiction;

- CONTINENTAL is currently involved in litigation other than this case pending in Texas courts;

- CONTINENTAL is currently in litigation in court in Texas answering claims asserting the failure of CONTINENTAL tires in Texas where CONTINENTAL has not raised any challenge to the Texas's court's personal jurisdiction over CONTINENTAL in that pending litigation;

- From 2004 to 2019 CONTINENTAL has been haled into court in Texas to answer claims asserting the failure of CONTINENTAL tires in Texas;

- From 2004 to 2019 CONTINENTAL has been haled into court in Texas to answer claims asserting the failure of CONTINENTAL tires in Texas without raising any challenge to the Texas's personal jurisdiction over CONTINENTAL;

- If the facts of a particular case establish that a Texas court has proper jurisdiction, CONTINENTAL *could reasonably anticipate being haled into court in Texas to answer claims asserting the failure of CONTINENTAL products in Texas;*

- CONTINENTAL offers services to help distributors (located in Texas) develop their own public internet websites and that (Texas) distributors can subscribe to content about CONTINENTAL products for use on their websites;

- CONTINENTAL has disseminated safety recall information through its distributors (located in Texas) and also through its website, www.continentaltire.com (accessible in Texas). CONTINENTAL also sends notices to (Texas) consumers who have registered his or hers tires with CONTINENTAL'S website;

- CONTINENTAL'S internet website, at the following webpage www.continentaltire.com, (accessible in Texas) has a link describing tires subject

- to recall and has a link through which (Texas) consumers may locate a service center for service;

- CONTINENTAL has issued technical service bulletins to (Texas) distributors and dealerships of vehicles equipped with Continental tires on a variety of subjects;

- CONTINENTAL gathers data, in Texas to monitor vehicle performance;

- CONTINENTAL has a website, www.continentaltire.com (accessible in Texas) where Texas consumers can learn information from that website regarding tire distributors which sell CONTINENTAL tires;

- CONTINENTAL has a public internet website, www.continentaltire.com accessible in Texas, which enables a Texas consumer to find retailers/dealers who sell CONTINENTAL products by searching based on geography (address, zip code, etc.). This site provides a list of dealers based on the search criteria entered by the consumer;

- CONTINENTAL has a public internet website, www.continentaltire.comng promotions or rebates on tires. The site enables a consumer to find retailers/dealers who sell CONTINENTAL products by searching based on geography (address, zip code, etc.). This site provides a list of dealers based on the search criteria entered by the consumer;

- CONTINENTAL's website, www.continentaltire.com (accessible in Texas) allows (Texas) consumers to learn information from that website regarding tire distributors which sell CONTINENTAL tires;

- CONTINENTAL is registered to do business in Texas and has a registered agent for service of legal process in Texas;

- CONTINENTAL admits it holds trademarks which it enforces in Texas and has contractual agreements with Texas companies to use CONTINENTAL's trademarks within Texas;

- CONTINENTAL sells tires to and by its distributors within the State of Texas;

- the subject Continental Contitrac (DOT ADT6 45BP 1904) tire was purchased new in Texas;

- CONTINENTAL directly targets marketing to, and franchises within, Texas, and sets prices in the Texas market in conjunction with contracts between CONTINENTAL and Texas businesses;

- the Plaintiffs' causes of action arise from CONTINENTAL's activities related to the manufacture and research and development and design implementation and

testing and in-field monitoring and warranting and warning dissemination in relation to tires such as the Continental Contitrac (DOT ADT6 45BP 1904), which was purchased new in Texas as, as well as countless other tires directed into the Texas market;

- CONTINENTAL participated in the design and manufacture of the defectively designed and manufactured tire purchased in Texas which failed in a catastrophic manner that resulted in the damages suffered by the Plaintiffs as set forth below;

- the Plaintiffs' causes of action arises from CONTINENTAL's failure to carefully perform the certification and warranting and in-field monitoring and related warning tasks (and CONTINENTAL's failure to carefully perform the related safety duties undertaken by CONTINENTAL in connection with performing these statutory duties) in connection with the Plaintiffs' failed tire and the tire line at issue as required pursuant to 49 U.S.C. § 30112(a);

- the Plaintiffs' causes of action arise from CONTINENTAL's activities related to the design of tires made with patented technology invented by the employees of CONTINENTAL, and such tires include the Continental Contitrac (DOT ADT6 45BP 1904) tire purchased new in Texas as well as countless other tires directed into the Texas market;

- the Plaintiffs' causes of action in this case are based, in part, on CONTINENTAL having undertaken the duty to come into Texas and warn some tire service centers in Texas of the risks of using CONTINENTAL tires that are more than five years old because of the effects of aging on the rubbers CONTINENTAL chose to put into its tires, including the tire at issue which was purchased in Texas;

- the Plaintiffs' causes of action in this case are based, in part, on CONTINENTAL issuing and disseminating instructions and warnings in Texas regarding the service life for passenger car and light truck tires under circumstances such that CONTINENTAL knew or should have known that this task was necessary for the protection of Texas customers, such as and including the Plaintiffs;

- several years prior to the new sale of the subject tire, CONTINENTAL disseminated Technical Bulletins to Discount Tire, amongst other retailers;

- CONTINENTAL undertook the duty to disseminate Technical Bulletins in Texas and was negligent in its performance of this task undertaken in Texas;

- CONTINENTAL created Technical Bulletins;

- CONTINENTAL disseminated Technical Bulletins to some tire service providers in Texas;

- CONTINENTAL intended the Technical Bulletins to be considered by tire service providers, including those in Texas, when they were advising customers, including those in Texas, about servicing their CONTINENTAL tires;

- the Plaintiffs' causes of action in this case are based, in part, on CONTINENTAL negligently carrying out the undertaken duty (to issue and disseminate instructions and warnings) performed in Texas and in connection with tire service centers in Texas;

- the Plaintiffs' causes of action in this case are based, in part, on CONTINENTAL issuing and disseminating instructions and warnings in Texas regarding the service life for passenger car and light truck tires under circumstances such that CONTINENTAL knew or should have known that service providers in Texas and tire customers in Texas rely on the performance of CONTINENTAL to exercise care when issuing and disseminating instructions and warnings about the conditions for safe use of CONTINENTAL tires in use on Texas roads;

- the Plaintiffs' causes of action in this case are based, in part, on CONTINENTAL failing to exercise care in Texas when issuing and disseminating instructions and warnings regarding the service life for passenger car and light truck tires under such circumstances that the risk of harm to the Plaintiffs from the detread of an aged tire purchased in Texas was increased because their aged Continental Contitrac (DOT ADT6 45BP 1904) tire was not removed from service but was sold in Texas;

- the Plaintiffs' causes of action in this case are based, in part, on the fact that the owner would have replaced the failed tire, but – instead never received those instructions and warnings carelessly disseminated in Texas and so CONTINENTAL's failure to exercise reasonable care in the tasks CONTINENTAL undertook to perform in Texas increased the risk of harm to the Plaintiffs from an aged tire tread separation;

- the Plaintiffs' causes of action in this case are based, in part, on the fact that CONTINENTAL placed the tire at issue, which CONTINENTAL designed, into the "stream of commerce" with the expectation that it would be "used by consumers in the forum state" as those phrases are used in *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013);

- CONTINENTAL is aware that the stream of commerce will sweep its tires into Texas;

- beyond placing the CONTINENTAL tire at issue into the stream of commerce, CONTINENTAL has also engaged in additional conduct that indicates an intent to serve the market in Texas;

- CONTINENTAL's additional conduct indicating an intent to serve the market in Texas during the period from 2004 through 2019 includes advertising in Texas

through national advertising that has intentionally pervaded into Texas, and through specific marketing efforts particularly targeted at Texas, including advertising focused on events in Texas;

- during the period from 2004 through 2019, CONTINENTAL spent millions of dollars marketing its tires in Texas, including both Texas-specific promotions and national marketing that pervades into Texas;

- during the period from 2004 through 2019, CONTINENTAL had knowledge that the used tire market is a large segment of the tire market;

- during the period from 2004 through 2019, CONTINENTAL had knowledge that CONTINENTAL's original equipment automotive manufacturing customers routinely sell used CONTINENTAL tires on used vehicles;

- during the period from 2004 through 2019, CONTINENTAL has not dissuaded CONTINENTAL's original equipment automotive manufacturing customers from perpetuating the used tire market by selling used CONTINENTAL tires on used vehicles;

- during the period from 2004 through 2019, CONTINENTAL has routinely performed in-field service and monitoring of tires (including performing warranting, recalling, and technical service) in Texas on tires initially purchased in other states;

- during the period from 2004 through 2019, CONTINENTAL trained personnel at CONTINENTAL tire dealerships in Texas in tire workmanship and materials standards applicable to Continental Contitrac tires;

- during the period from 2004 through 2019, CONTINENTAL has participated in aspects of its product warranty and adjustment process applicable to Continental Contitrac tires from within Texas;

- during the period from 2004 through 2019, CONTINENTAL sent technical service bulletins applicable to Continental Contitrac tires into Texas; CONTINENTAL directed customers to approved CONTINENTAL dealerships in Texas to have service bulletin work performed on Continental Contitrac tires regardless of which various states where tires were initially sold where the tires were located in Texas at the time of the service bulletin work;

- during the period from 2004 through 2019, CONTINENTAL gathered data about its tire lines' performance in Texas and used that data in the redesign of its products;

- during the period from 2004 through 2019, CONTINENTAL has held patents and trademarks which it demands must be honored and enforced in Texas;

- CONTINENTAL's additional conduct indicating an intent to serve the market in Texas during the period from 2004 through 2019 includes establishing channels for providing regular advice to customers in Texas;

- during the period from 2004 through 2019, CONTINENTAL has employed dozens of Texas residents, and CONTINENTAL has recruited dozens of Texas residents for employment in Texas and beyond Texas;

- CONTINENTAL has had Area Sales Managers assigned to areas including Texas at some time between 2004 through 2019;

- CONTINENTAL has had multiple Area Sales Managers assigned to multiple areas that have included different locations within Texas at some time between 2004 through 2019;

- CONTINENTAL has had Regional Sales Managers assigned to regions including Texas at some time between 2004 through 2019;

- CONTINENTAL has had multiple Regional Sales Managers assigned to multiple regions that have included different locations within Texas at some time between 2004 through 2019;

- CONTINENTAL has had Strategic Accounts Managers assigned to accounts in Texas at some time between 2004 through 2019;

- CONTINENTAL has had Sales Analysts whose responsibilities included analyzing sales in Texas at some time between 2004 through 2019;

- CONTINENTAL has had Retail Sales Representatives whose territories included Texas at some time between 2004 through 2019;

- CONTINENTAL has contracted with hundreds of individuals residing in Texas and businesses in Texas pursuant to contracts to be performed, at least in part, in Texas at some time between 2004 through 2019;

- CONTINENTAL's additional conduct indicating an intent to serve the market in Texas includes marketing tires in Texas through a network of Texas distributors who serve as CONTINENTAL's sales agents in Texas;

- CONTINENTAL has had accounts with tire distributors in Texas at some time between 2004 through 2019;

- CONTINENTAL has had accounts with car dealerships in Texas at some time between 2004 through 2019;

- CONTINENTAL has had accounts with tire dealerships in Texas at some time between 2004 through 2019;

- CONTINENTAL has had accounts with tire wholesalers in Texas at some time between 2004 through 2019;

- CONTINENTAL has had accounts with municipalities in Texas at some time between 2004 through 2019;

- CONTINENTAL has had accounts related to advertising and marketing directed specifically into Texas markets at some time between 2004 through 2019;

- CONTINENTAL has entered into numerous Authorized Retail Agreements during the period from 2004 through 2019 with persons or business entities located in Texas;

- CONTINENTAL has entered into numerous CONTINENTAL Dealer Agreements during the period from 2004 through 2019 with persons or business entities located in Texas;

- CONTINENTAL has entered into numerous Passenger Tire Agreements during the period from 2004 through 2019 with persons or business entities located in Texas;

- CONTINENTAL designed the failed tire at issue;

- CONTINENTAL has contacts with Texas such that CONTINENTAL has purposefully availed itself of the benefits and privileges of doing business in Texas;

- CONTINENTAL does business in Texas and has purposefully availed itself of the rights associated with doing business in Texas;

- during the period from 2004 through 2019, CONTINENTAL has been as a party in hundreds of civil actions in state and federal courts in Texas where the suits have asserted that the failure of a CONTINENTAL tire caused injury, death, or other damage;

- during the period from 2004 through 2019, CONTINENTAL has on dozens of occasions honored contractual and common law duties to defend and indemnify retail sellers of CONTINENTAL tires in Texas courts when the retail seller was sued in Texas courts;

- during the period from 2004 through 2019, CONTINENTAL has been involved in sufficient litigation in Texas involving CONTINENTAL tires which have been associated with crashes in Texas such that CONTINENTAL can anticipate being haled into court in Texas based on crashes which occurred in Texas;

- during the period from 2004 through 2019, CONTINENTAL has directly or indirectly sold millions of tires in Texas generated hundreds of millions of dollars in sales in Texas;

- during the period from 2004 through 2019, CONTINENTAL made efforts to serve, directly and indirectly, the market for tires in Texas and the 49 other states;

- during the period from 2004 through 2019, CONTINENTAL's sale of the Continental Contitrac line has been a voluntary interstate activity conducted for profit by CONTINENTAL;

- CONTINENTAL has contacts with Texas such that CONTINENTAL reasonably anticipates being haled into Court in Texas;

- this Court's exercise of jurisdiction over CONTINENTAL does not violate CONTINENTAL's constitutional rights under the Due Process Clause;

- this Court's exercise of jurisdiction over CONTINENTAL does not violate the traditional notions of fair play and substantial justice;

- the Texas standard for exercising specific personal jurisdiction in a product liability case where the nonresident defendant's product was sold into Texas indirectly through an independent seller is set forth in *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010), and was more recently discussed in *TV Azteca v. Ruiz*, 490 S.W.3d 29, 46, 54 (Tex. 2016), and in *Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, 08-14-00172-CV, 2016 WL 1367421, at *10–12 (Tex. App.—El Paso Apr. 6, 2016, no pet.); and

- the Texas standard for exercising specific personal jurisdiction in a non-product-liability tort case where the nonresident defendant's disputed conduct extended into Texas is set forth in *TV Azteca v. Ruiz*, 490 S.W.3d 29, 46, 54 (Tex. 2016), and *Cornerstone Healthcare Group Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70-71, 73 (Tex. 2016).

## IV. JURISDICTION & VENUE

4.1 Venue is proper under 28 § U.S.C 1391(b)(2) as the subject tread-separation which lead to the death of Troy Farris occurred in the Western District of Texas, Waco Division. As such, a substantial part of the events giving rise to the claim occurred in the Western District of Texas, Waco Division.

4.2     This Court has subject matter jurisdiction over the controversy under 28 U.S.C. § 1332(a)(1).  This controversy well exceeds $75,000 and complete diversity of the parties exists. Plaintiffs are citizens of the State of Texas.  Defendant Continental is a citizen of South Carolina since all of the members of Continental reside in South Carolina.

## V.     FACTS

5.1     On July 24, 2018 Troy Farris was driving a 1999 Freightliner truck bearing Vin # 1FUYDSEBXXP992638 (hereinafter Freightliner) on Southbound Highway 7 in Falls County, Texas.

5.2     While traveling south, the Freightliner suffered a catastrophic tread-belt failure on the front-left steer tire, a Continental Medium-Truck Tire built in the 50th week of 2010 at Continental's Mount Vernon General Plant (hereinafter referred to as the Subject Tire).

5.3     As a result of the tread-belt separation on the Subject Tire, Troy Farris was unable to control the Freightliner.

5.4     Numerous studies have shown that vehicles, including 18-wheelers, are uncontrollable during a tire failure event.

5.5     During the crash sequence, the Freightliner crossed into the Northeast lane, struck a guardrail, and continued down the bar ditch on the south side of the road.

5.6     Troy Farris as a result of this crash suffered severe and catastrophic injuries that lead to his untimely death.

5.7     Troy Farris death was caused by the treat-belt separation of the subject tire.

5.8     Troy Farris was a long-time truck driver who had worked for Smetana & Associates Construction for more than 32 years.

5.9     Troy Farris leaves behind his wife Dorothy Farris of over 30 years, his biological sons Christopher Scott Farris and Aaron Lee Farris, and biological daughter Aleya Mae Farris.

5.10    The injuries and damages sustained by the Plaintiffs were caused by the tread-belt separation of the subject tire.

## VI.     CAUSES OF ACTION

### A.     Strict Product Liability

6.1     The tire in question was originally designed, manufactured, sold and/or placed into the stream of commerce by CONTINENTAL.

6.2     At the time of the sale of the tire in question, CONTINENTAL was in the business of designing, manufacturing and selling automotive tires such as the tire in question. At the time the tire in question was designed, manufactured, sold and/or placed into the stream of commerce by CONTINENTAL, the tire was defective and unreasonably dangerous in its design, marketing and manufacture.

6.3     Specifically, the Subject Tire failed after low service mileage during its original tread life as a result of a complete separation of the tread and upper steel belt structure of the tire from its carcass.

6.4     Separation resulted from manufacturing and design defects, including areas in which the tire materials did not have the necessary bond strength to withstand normal use. The Subject Tire contained an inadequate inner liner, poor belt cable spacing, poor joints, inadequate aging resistance and improper antidegradants, which permitted premature deterioration of the internal structure.

6.5     The Subject Tire was defectively designed because CONTINENTAL did not employ 0° nylon belts (nylon overlays) to mitigate the known propensity of steel belt radial tires to fail by belt edge separation.

6.6     The Subject Tire in question (DOT: ADT6 45BP 1904) was also defective in design because CONTINENTAL did not incorporate adequate wedging in the tire to relieve belt edge stress and inadequate or nonexistent under tread to improve the tire's fatigue strength. CONTINENTAL further failed to warn consumers regarding the hazards associated with tire aging, including that tire aging is a known factor for tire rubber degradation, fatigue and failure, including tread belt separations.

6.7     These defective and unreasonably dangerous conditions were a producing cause of the accident made the basis of this suit (i.e., tread belt separation and resulting loss of vehicle control), the injuries and the damages sustained by the Plaintiffs, which are in an amount far in excess of the minimum $75,000.00 jurisdictional limits of the federal courts.

6.8     Aside from normal wear and tear, the Subject Tire was in the same defective condition at the time of the accident as it was when it left the hands of CONTINENTAL.

6.9     The Subject Tire was expected to and in fact reached the user or consumer without substantial change in the condition in which it was sold.

6.10    Technologically and economically feasible safer alternative designs existed that would have prevented or significantly reduced the risk of injury without substantially impairing the utility of the product.

6.11    At the time the Subject Tire left the possession of CONTINENTAL, there existed safer alternative designs that would have prevented the tread belt separation.

6.12    These safer alternative designs were economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge.

**B.    Negligence**

6.13    CONTINENTAL committed unreasonable acts of omission and commission, which collectively and severally, constitute negligence.

6.14    Such negligence was a proximate cause of the accident, and of the Plaintiffs' injuries and damages. CONTINENTAL's negligence was a proximate cause of the accident made the basis of this suit and the injuries and the damages sustained by the Plaintiffs, which are in an amount far in excess of the minimum $75,000.00 jurisdictional limits of the federal courts.

**C.    Inadequate Standard**

6.15    Applicable safety standards issued by the Federal Government or any other agency or group, if any, were inadequate to protect the public from unreasonable risks of injury or damage and Defendants have withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations set at issue in this action.

6.16    CONTINENTAL recommended, sold, distributed, and warranted the subject tire. CONTINENTAL knew the subject tire would be purchased and used without inspection for defects.

6.17    The subject tire was defective and unreasonably dangerous in design, manufacture, and marketing when they left control of CONTINENTAL.

6.18    The subject tire failed to perform as safely as an ordinary consumer would expect when using it in an intended and/or reasonably foreseeable manner. The risk of danger inherent in the design of the subject tire outweighed the benefits of the design utilized.

6.19    Technologically and economically feasible safer alternative designs of the subject tire existed both at the time of design, development and manufacture of the subject tire, and at all times prior to the accident that would have substantially reduced or eliminated the risk of injury, failure, and/or harm complained of.  The subject tire lacked warnings and instructions and/or contained defective and inadequate warnings and instructions, which made each of it unreasonably dangerous and defective.  At all relevant times and at the time of injury, the subject tire was being used in a manner intended by CONTINENTAL, and in a manner that was reasonably foreseeable by CONTINENTAL as involving a substantial danger not readily apparent.  Adequate warnings of the danger were not given.

6.20    Plaintiffs was a user and/or consumer injured, harmed, and/or damaged by the subject tire.  The subject tire was defective and unreasonably dangerous in the following respects: (a) its poor belt adhesion due to manufacturing and design defects; (b) its overall lack of robustness; (c) its poor skim stock; (d) its failure to use a nylon cap ply; (e) its poor antidegradant package; (f) its oxidation; (g) its lack of warnings and/or lack of adequate warnings and/or instructions for safe use about tire age; and (j) for all such other reasons as may be identified through further examination and testing of the subject tire.  Defendant CONTINENTAL failed to timely and/or adequately warn owners of the subject tire, failed to provide any post-sale warnings, failed to initiate a safety recall, and such other failures that resulted in the fatal incident made the basis of the suit.  Defendant CONTINENTAL further failed to issue (and/or failed to issue adequate) time-based warnings not to use the subject tire once it was no longer fit for use and service.  Defendant CONTINENTAL failed to warn and/or adequately warn consumers not to use the tire once it reached an age when it was no longer fit for use and service.

6.21   The aforementioned defects in the subject tire were a producing and proximate cause of the accident, of the Defendant's/Cross-Claimant's economic and noneconomic damages, injuries, pain, anguish, suffering, and of the Defendant's/Cross-Claimant's past and future economic and noneconomic damages, injuries, pain, anguish, and suffering.

6.22   CONTINENTAL is strictly liable for defects in the subject tire.

## VII.   DAMAGES

7.1   As a producing, direct and proximate result of the incident, injuries, and damages for which all Defendants are liable, Plaintiffs seek and are entitled to general, special, economic and noneconomic damages, as applicable to Plaintiffs, in an amount in excess of the minimum jurisdictional limits of the court, as determined to be just and fair by the jury.  Such damages include, but are not necessarily limited to:

7.2   As a producing, direct and proximate result of the accident, injuries, and deaths for which Defendants are liable, Plaintiffs seek and are entitled to the following damages:

    *a.*   *Wrongful Death Damages*

        (1)   pecuniary loss in the past and future;
        (2)   loss of consortium, companionship and society in the past and future;
        (3)   mental anguish in the past and future;
        (4)   loss of inheritance;
        (5)   loss of service;
        (6)   loss of community estate and addition to estate;
        (7)   all other damages allowed by law and equity.

    *b.*   *Survival Damages*

        (1)   pain and mental anguish;
        (2)   medical expenses;
        (3)   funeral and burial expenses; and
        (4)   all other damages allowed by law and equity.

## VIII. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

8.1     Plaintiffs seek prejudgment and post judgment interest as allowed by law.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, that this cause be set down for trial before a jury, and that Plaintiffs have and recover judgment of and from Defendant for actual and exemplary damages in such amount as the evidence may show and the jury may determine to be proper, together with prejudgment interest, post judgment interest, costs of suit, and such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted,

By:     */s/ David E. Harris*
David E. Harris
*Attorney in Charge*
State Bar No. 24049273
Federal ID No. 712461
dharris@shhlaw.com
mresendez@shhlaw.com
Louie J. Cook
State Bar No. 24101191
**SICO HOELSCHER HARRIS LLP**
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: 361-653-3300
Fax: 361-653-3333

**ATTORNEY FOR PLAINTIFFS**